UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF KENTUCKY

FRANKFORT DIVISION

| | |
|---|---|
| BRIAN SPENCER, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>JRN, INC., and DOES 1 to 25,<br><br>        Defendants. | Case No.<br><br>**NATIONWIDE**<br><br>**CLASS ACTION COMPLAINT** |

**NATIONWIDE CLASS ACTION COMPLAINT**

COMES NOW, Plaintiff BRIAN SPENCER ("Plaintiff"), on behalf of himself and all others similarly situated, and asserts as follows:

**INTRODUCTION**

1. Plaintiff, a person with a mobility disability who use a wheelchair for mobility, brings this action individually and on behalf of all others similarly situated against Defendants, asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. (the "ADA"), and its implementing regulations. Defendants JRN, INC., and DOES 1 through 25 (collectively, "Defendants") collectively own, lease, and/or operate at least one hundred and sixty (160) KFC restaurants in the states of Alabama, Florida, Georgia, Illinois, Indiana, Kentucky, Missouri, North Carolina, South Carolina, Tennessee, and Virginia. Plaintiff's claims arise from own his experience with excessive sloping conditions in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at places of public accommodation owned, operated, controlled, and/or leased by Defendants ("Defendants'

facilities"), and from site investigations at fifteen (15) of Defendants' facilities also finding excessive sloping conditions.

2. Plaintiff asserts that these excessive sloping conditions persist in part as a result of Defendants' existing but inadequate internal maintenance procedure, which fails to ensure compliance with the sloping requirements of the ADA's implementing regulations. *See* 28 C.F.R. §§ 36.101 *et seq*.

3. The ADA expressly authorizes the injunctive relief aimed at modification of **existing** policies, practices, or procedures that Plaintiff seeks in this action. In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. … Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy…
>
> 42 U.S.C. § 12188(a)(2).

4. Based on the extensive factual investigation performed by Plaintiff's investigators, Plaintiff believes and therefore asserts that numerous additional facilities owned, controlled, and/or operated by Defendants have Parking Areas that are, or have become, inaccessible to individuals who rely on wheelchairs for mobility due to excessive sloping, demonstrating that the Defendants' existing internal maintenance procedure (discussed at ¶¶ 19-22 below) is inadequate and must be modified. 42 U.S.C. § 12188(a)(2).

5. Plaintiff brings this action individually and on behalf of all other similarly situated wheelchair users to compel Defendants to (i) remediate all access barriers within in the Parking Areas of their facilities, and (ii) modify its existing policies to ensure that its facilities comply with the ADA implementing regulations' excessive sloping requirements. 28 C.F.R. §§ 36.101 *et seq*.

6. Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks prospective injunctive relief requiring that:

   a. Defendants remediate excessive sloping within the Parking Areas at Defendants' facilities, consistent with the ADA's implementing regulations;

   b. Defendants modify its existing maintenance policy to ensure that the excessive sloping conditions within the Parking Areas at Defendants' facilities do not reoccur; and

   c. Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 6.a. and 6.b. has been implemented and will remain in place.

7. Plaintiff's claims for prospective injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks prospective injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## **PARTIES**

8. Plaintiff Brian Spencer is, and at all times relevant hereto was, a resident of Frankfort, Kentucky. Plaintiff is a person with a mobility disability. In April 2019, Mr. Spencer had a stroke that affected his left side of his body. As a result, he has very minimal left arm and leg movement and uses a wheelchair for mobility.

9. Plaintiff is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

10. Defendant JRN, INC. is, and at all relevant times was a Tennessee Corporation, doing business in the States of Alabama, Florida, Georgia, Illinois, Indiana, Kentucky, Missouri, North Carolina, South Carolina, Tennessee, and Virginia as the owner, lessee, and/or operator of dozens of KFC restaurants in these states.

11. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1 through 25, are unknown to Plaintiff at this time. Plaintiff will amend this Complaint to assert their true names and capacities when known. Plaintiff is informed and believe and thereon allege that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

12. Plaintiff asserts that Defendants, including DOE Defendants, and each of them at all times mentioned in this Complaint were the alter egos, affiliates, agents and/or employees and/or employers of their Co-Defendants, under shared management, ownership, and common control of each other, and part of a single Franchise Group, and in doing the things alleged in this Complaint were acting within the course of such agency, affiliation, shared management, ownership, control, and/or employment and with the permission and consent of their Co-Defendants.

13. Plaintiff is further informed and believes, and based thereon alleges that Defendants collectively own, lease, and/or operate one hundred and sixty (160) KFC restaurants in the states of Alabama, Florida, Georgia, Illinois, Indiana, Kentucky, Missouri, North Carolina, South Carolina, Tennessee, and Virginia, as described herein.

14. Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7) and are therefore subject to the requirements of the ADA.

## FACTUAL ASSERTIONS

**Plaintiff Has Been Denied Full and Equal Access to Defendants' Facilities**

15. Plaintiff visited Defendants' facilities located at 3030 Richmond Road, Lexington, Kentucky, on January 19, 2022, where he experienced unnecessary difficulty and risk of physical harm exiting and entering his vehicle, and navigating the facilities, such that extra care was needed to avoid falling and to safely traverse the area, due to excessive slopes in the purportedly accessible Parking Areas as set forth in more detail below.

16. Despite this difficulty and risk, Plaintiff plans to return to Defendants' facilities. Plaintiff often travels to the area for a variety of reasons. On January 19, 2022, Mr. Spencer traveled to the area with his wife to visit their family in Lexington. Mr. Spencer often travels to different family members' houses in Lexington and often stops for KFC on these trips due to their preference for the "big box" containing a sandwich, mac and cheese, fries, coleslaw, and a Pepsi. Mr. Spencer further frequents this location when traveling to watch his son play football. Plaintiff will be visiting the area multiple times a month to watch his son play football and to visit his family. During those visits Mr. Spencer intends to dine at Defendants' Richmond Road facility. Furthermore, Plaintiff intends to return to Defendants' facility to ascertain whether it remains in violation of the ADA.

17. As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded and Plaintiff will be deterred from returning to and fully and safely accessing Defendants' facilities due to the discrimination he has previously encountered there.

**Defendants Repeatedly Deny Individuals with Disabilities
Full and Equal Access to Defendants' Facilities**

18. As the owner and/or operator of its facilities, Plaintiff is informed and believes, and based thereon alleges that, as a KFC franchisee pursuant to franchise agreements, Defendants utilize a Confidential Operating Manual, "Standards Library," and "System Standards" (collectively the "Manual") which sets forth the standards issued by the franchisor, and is required to follow all of the Manual's instructions, requirements, standards, specifications, and procedures at each of their locations, including those setting further management, administration, and maintenance policies, practices, and procedures related to the maintenance of the "Outlet's physical facilities."

19. Plaintiff is further informed and believes, that pursuant to the franchise agreements, Defendants are required to maintain the Restaurant buildings, drivethrus, parking lots, and landscaped areas at each individual location in conformance with the specifications set forth in the Manual.

20. Plaintiff is informed and believes that, pursuant to the franchise agreement, Defendants are required to enter into lease agreements containing specific terms, setting forth, among other things, Defendants' obligations to comply with the requirements of the ADA and the regulations promulgated thereunder, and to maintain, repair, and/or replace the premises, and all structures, appurtenances, fixtures, equipment, facilities and entry, exit, parking and other areas on the leased property. Plaintiff is informed and believes that, pursuant to the franchise agreement, Defendants "must comply with all local, state, and federal laws, regulations and government orders in the operation of [their] restaurants."

21. Plaintiff is further informed and believes, and based thereon alleges that, pursuant to the franchise agreement, that Defendants are required to designate an "Key Operator" that, after

6

a training course and being approved by the Franchisor, supervises the operation of Defendants' restaurants within designated market areas. Due to the high number of locations and geographic distances, Defendants manage compliance with their centralized policies, practices, or procedures concerning its daily outside maintenance obligations, and obligations to maintain, repair, and/or replace features within its Parking Areas, through one or more Directors of Operations, who supervises above restaurant leaders, including Area Restaurant Leaders; the Area Restaurant Leaders, in turn, provide leadership and direct supervision to General Managers, and Assistant General Managers; the General managers then provide supervision of the Unit Managers who are in-restaurant supervisors.  Plaintiff is further informed and believes, and based thereon asserts that Defendants employ a Key Operator who oversees these positions that oversee the day-to-day maintenance and act as a liaison between operations and service providers for Defendants' restaurants, and who are responsible for developing, scheduling, and updating preventative maintenance programs for Defendants' restaurants.

22. Defendants' centralized maintenance and operational policies, practices, or procedures have systematically and routinely resulted in excessive sloping conditions in the Parking Areas of Defendants' facilities, in violation of the ADA and its implementing regulations.

23. On Plaintiff's behalf, investigators examined multiple locations that Plaintiff is informed and believes are owned, controlled, and/or operated by Defendants, and found the following violations which are illustrative of the fact the Defendants' existing policies, practices, or procedures, are discriminatory, unreasonable, inadequate, and routinely result in excessive sloping conditions in the parking spaces, accessible routes and curb ramps:

  a. 3030 Richmond Road, Lexington, Kentucky

      i. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%[1].

  b. 109 Ragland Road, Mt Sterling, Kentucky

      i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%[2].

  c. 900 North Main Street, Nicholasville, Kentucky

      i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%.

  d. 304 Letton Drive, Paris, Kentucky

      i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%.

  e. 2037 Lee Highway, Bristol, Virginia

      i. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%.

  f. 1800 West Main Street, Salem, Virginia

      i. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33%.

  g. 5321 Hickory Hollow Lane, Antioch, Tennessee

      i. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%.

---

[1] The 2010 Standards at §§ 405.2 and 406.1 set the maximum threshold for ramp running slopes at not steeper than 1:12, i.e., 8.3%, and limit curb ramp flares to not steeper than 1:10, i.e., 10%. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.5, §4.8.2.

[2] Pursuant to the ADAAG 2010 Standards, parking spaces or access aisles may not have slopes steeper than 1:48, i.e., 2.1%. *See,* 36 C.F.R. part 1191, § 502.4. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.6.3.

- h. 336 Harding Place, Nashville, Tennessee

    i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%;

    ii. The purportedly accessible curb ramp projected into an access aisle[3].

- i. 1319 Murfreesboro Place, Franklin, Tennessee

    i. The purportedly accessible curb ramp projected into an access aisle.

- j. 1329 W Wade Hampton Boulevard, Greer, South Carolina

    i. The maneuvering clearance area immediately adjacent to the facilities entrance had a slope exceeding 2.1%.

- k. 1466 Woodruff Road, Greenville, South Carolina

    i. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%.

- l. 644 Fairview Road, Simpsonville, South Carolina

    i. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%.

- m. 1030 Shumard Avenue, Knoxville, Tennessee

    i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%.

- n. 2626 Scottsville Road, Bowling Green, Kentucky

    i. The purportedly accessible curb ramp projected into an access aisle.

- o. 75 KY 92, Williamsburg, Kentucky

---

[3] Pursuant to the 2010 Standards, curb ramps cannot project into parking spaces or access aisles. *See,* 36 C.F.R. part 1191, § 406.5. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.6, §4.7.8.

      i. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%;

      ii. The purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10.0%.

24. As evidenced by the widespread excessive sloping conditions present in the Parking Areas of Defendants' facilities, absent a change in Defendants' existing procedure, excessive sloping conditions will continue to reoccur in Defendants' facilities even after they have been remediated.

## JURISDICTION AND VENUE

25. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

26. Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

27. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## CLASS ASSERTIONS

28. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of himself and the following nationwide class:

> All wheelchair users with qualified mobility disabilities who were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any JRN, Inc., and DOES 1 through 25, location in the United States on the basis of disability because such persons encountered accessibility barriers due to Defendants' failure to comply with the ADA's slope regulations within the purportedly accessible Parking Areas of its facilities.

29. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the

respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

30. <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

31. <u>Common Questions of Fact and Law</u>:  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

32. <u>Adequacy of Representation</u>:  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

33. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## SUBSTANTIVE VIOLATION

### VIOLATION OF THE ADA, TITLE III
**[42 U.S.C. §§ 12101,** *et seq.***]**
**(Against all Defendants)**

34. Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

35. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of mobility. Accordingly, he is an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(2).

36. Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

37. Plaintiff is informed and believes, and based thereon asserts that Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

38. The ADA and the franchise agreements require the accessible features of Defendants' facilities, which include Parking Areas of its facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.

39. The architectural barriers described above demonstrate that Defendants' facilities were not constructed or altered in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs in the first instance, and/or that Defendants' facilities were not maintained or operated so as to ensure that they remained accessible to and usable by individuals who use wheelchairs.

40. Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

41. Defendants' repeated and systemic failures to remove architectural barriers, to maintain the accessible features of their facilities, and/or modify its existing procedures to ensure compliance with the sloping requirements of the ADA's implementing regulations once constructed, constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

42. Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

43. Unless Defendants are restrained from continuing its ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

44. Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes his statutory rights to declaratory and prospective injunctive relief, as well as costs and attorneys' fees.

### PRAYER FOR DECLARATORY JUDGMENT AND PROSPECTIVE INJUNCTIVE RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for:

a. A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) directs Defendants to modify its existing procedures to prevent the reoccurrence of excessive sloping conditions in the Parking Areas of its

      facilities post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c.     An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d.     Payment of costs of suit;

e.     Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f.     The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated:  May 3, 2022.                               Respectfully Submitted,

                                                          ***/s/ Justin S. Peterson***
                                                          Justin S. Peterson
                                                          **GOLDEN LAW OFFICE, PLLC**
                                                          771 Corporate Drive, Suite 800
                                                          Lexington, KY 40503
                                                          Phone: 859-469-5000
                                                          jpeterson@goldenlawoffice.com

                                                          *Attorneys for Plaintiff and the Class*